UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **DAVID SCHACHTER,** *Plaintiff* § § § | |
| v. § | No. 1:24-CV-1143-DH |
| § | |
| **CHRISTI MOELLER, ET AL.,** *Defendants* § § § | |

**ORDER**

Before the Court is Defendant Christi Moeller's motion to dismiss, Dkt. 24, and all related briefing. Having reviewed the filings and the relevant law, the Court **GRANTS IN PART** and **DENIES IN PART** Moeller's motion to dismiss.

## I. BACKGROUND

Plaintiff David Schachter brought claims against Moeller for conspiracy to commit wrongful arrest in violation of his Fourth Amendment rights, as well as for declaratory relief related to his resignation from his job as a schoolteacher. Dkt. 16, at 17-20; 22-23.[1] Schachter, who describes himself as a "dedicated and high-minded English teacher," worked at a school in the Wimberley Independent School District ("WISD") until his school's principal, Moeller, informed him that that he would be placed on administrative leave "because of several parent complaints" that Schachter alleges Moeller described to him as "trivial" at the time. *Id.* at 2. Schachter agreed to

---

[1] Schachter also brought a malicious-prosecution claim against Defendants Ashley Martinez, James Young, Kenneth Carpenter, Chase Fuller, Eugene Carranza, and Jessica Rabena. Dkt. 16, at 20-22.

1

take administrative leave and continued to perform certain aspects of his job remotely until he was unexpectedly locked out of the school's online systems. *Id.* at 3.

Around that same time, a colleague reached out to Schachter and shared that "there were preposterous rumors mushrooming throughout the school district accusing Mr. Schachter of sexual misconduct with multiple students." *Id.* at 3-4. Schachter then met with WISD's superintendent, who encouraged Schachter to resign that same day "if he wanted the controversy to come to an end" and provided Schachter with a manila folder containing "numerous false and outlandish accusations" against Schachter. *Id.* at 4. The superintendent further "threatened that the controversy would not end but rather would continue to escalate" if Schachter did not agree to resign. *Id.* "Knowing that his reputation had been trashed within [WISD] such that he could never be an effective teacher in that community again but still believing that Defendant Moeller had told him the truth about the complaints being trivial and unfounded," Schachter agreed to resign and signed a "separation agreement and release of claims" document prepared by WISD's lawyers. *Id.* Schachter was arrested and criminally charged soon after his resignation but was ultimately acquitted by a jury. *Id.* at 2-3.

As to Moeller, in particular, Schachter alleges that she gave false and misleading information to law enforcement[2] regarding Schachter's (nonexistent) prior sexual misconduct with students and conspired with law enforcement to push

---

[2] Schachter also highlights that Moeller never reported Schachter's alleged misconduct to child protective services, which she would have been required to do as a mandatory reporter had she thought the allegations against Schachter were true. Dkt. 16, at 4.

2

Schachter out of the teaching profession by securing his arrest. *Id.* at 6-7. Based on discovery received during his criminal prosecution, Schachter alleges that Moeller spoke with Defendant Martinez, a police officer, about how Schachter was innocent but nonetheless concocted a plan to "get him out of here" by fabricating rumors about Schachter's history of sexual misconduct at prior schools and by "nudg[ing]" parents to file police reports. *Id.* at 7; 18 (alleging that "Defendant Martinez [met] with Defendant Moeller where they agreed to use the false allegations to ruin Mr. Schachter's career"). Schachter alleges that Moeller participated in a conspiracy to "promote and intensify the initial false allegations" because Schachter "was under contract and could not be fired" and because she "wanted him to quit in disgrace, be falsely charged, and never work again as a teacher." *Id.* at 19.

Moeller moved to dismiss Schachter's Fourth Amendment claim and request for declaratory relief against her. *See* Dkt. 24. Specifically, Moeller argues that she is entitled to qualified immunity on Schachter's wrongful-arrest claim and further urges this Court to dismiss Schachter's request for relief brought under the Texas Uniform Declaratory Judgment Act ("TDJA") for lack of jurisdiction or failure to state a claim. *Id.* at 2-9. Schachter opposed Moeller's motion, insisting that he has sufficiently stated his claim for conspiracy to commit wrongful arrest against Moeller and that she is not entitled to qualified immunity on that claim. Dkt. 29, at 2-8. Schachter further argues that he has properly alleged his request for declaratory judgment, and in the alternative, seeks leave to add two more parties to this claim

3

should the Court find that he has not included all necessary parties to adjudicate his request for equitable relief under the TDJA. *Id.* at 8-10.

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its

proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

**A. Schachter has stated a claim for conspiracy to commit false arrest against Moeller and overcome her assertion of qualified immunity.**

Schachter brought a wrongful-arrest claim against Moeller based on the alleged conspiracy she engaged in with law enforcement to "promote and intensify the initial false allegations against Mr. Schachter because he was under contract and could not be fired and because they wanted him to quit in disgrace, be falsely charged, and never work as a teacher again." Dkt. 16, at 19. Moeller urges the Court to dismiss Schachter's conspiracy claim against her based on her assertion of qualified immunity. Dkt. 24, at 2-8.

Qualified immunity shields a public official "from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Taylor v. Riojas*, 592 U.S. 7, 8 (2020). "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). To meet this burden, a plaintiff must plead specific allegations demonstrating: "(1) the violation of a constitutional right that (2) was clearly established at the time of the alleged misconduct." *Linicomn v. Hill*, 902 F.3d 529, 533 (5th Cir. 2018).[3] "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). In the context of a claim for conspiracy[4] to commit a false arrest in violation of the Fourth Amendment, a plaintiff

---

[3] The Fifth Circuit has at times described the second prong as an inquiry into whether an official's "actions were objectively unreasonable in light of clearly established law." *See, e.g.*, *Roque v. Harvel*, 993 F.3d 325, 334 (5th Cir. 2021). As it has recently clarified though, "there is no standalone 'objective unreasonableness' element to the Supreme Court's two-pronged test for qualified immunity" as "[t]hat language is a vestige of older case law that predates the Supreme Court's current test." *Hicks v. LeBlanc*, 81 F.4th 497, 503 n.14 (5th Cir. 2023) (internal citations removed).

[4] Moeller argues in her reply that Schachter's conspiracy claim should be dismissed on the basis that he failed "to identify such [a] claim" in his amended complaint. Dkt. 31, at 1. Schachter clarifies in his response that his Fourth Amendment claim against Moeller is a conspiracy claim. Dkt. 29, at 2. The federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1215 (3d ed. 2004) ("The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief." (footnotes omitted)). The Court thus declines to dismiss Schachter's conspiracy claim against Moeller on the basis of his imperfect statement, especially in light of the complaint's repeated references to Moeller's participation in a "conspiracy" to "frame" Schachter and Schachter's incorporation of "all prior and

must plead "the existence of a conspiracy involving state action," and "a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019).

Here, Moeller challenges whether Schachter has sufficiently pleaded facts causally connecting Moeller to the allegedly wrongful arrest and whether Schachter's right to be free from false arrest was clearly established as to Moeller at the time of the alleged Fourth Amendment violation. Dkt. 24, at 2-8. The Court will address each of these bases for dismissal in turn.

      1.    *Schachter has sufficiently stated a constitutional violation against Moeller under his claim for conspiracy to commit false arrest.*

Moeller first argues that Schachter has failed to plead a constitutional violation against her since he did not allege any facts showing that Moeller was "personally involved in or causally connected to [Schachter's] allegedly wrongful arrest" and because the independent-intermediary doctrine bars Schachter's claim. Dkt. 24, at 4-8. Generally, "[t]o be liable under § 1983, [an official] must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner v. Driver*, 848 F.3d 678, 695-96 (5th Cir. 2017) (citing *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008)). As Schachter points out, he explicitly alleged in his complaint that Moeller initiated and participated in a conspiracy with law-enforcement officials to deprive Schachter of his Fourth Amendment right to be free from false arrest. Dkts.

---

subsequent paragraphs and allegations" to support his false arrest claim against Moeller. Dkt. 16, at 6, 8, 19-20, 22-23.

16, at 6-8; 29, at 3-6. Additionally, since Schachter brings his claims under the "legal mechanism" of conspiracy, he need only show a "deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." Dkts. 16, 6-8; 29, at 2-6; *Shaw*, 918 F.3d at 419; *Bevill v. Fletcher*, 26 F.4th 270, 283 (5th Cir. 2022) (noting that conspiracy is the "legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act").

While "[b]ald allegations that a conspiracy existed are insufficient," here Schachter included specific factual allegations—gleaned from discovery received during his criminal case—in support of his conspiracy claim against Moeller. Dkt. 16, at 6-8, 19; *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987). In particular, Schachter identifies (1) a specific conversation where Moeller acknowledged to law enforcement that Schachter "was innocent" based on his references from prior schools, (2) the lack of eyewitnesses to any misconduct, (3) Moeller's sharing a "fabricated" story regarding Schachter's nonexistent "history of sexual misconduct" to encourage parents to file complaints against Schachter, and (4) Moeller's requesting that Schachter be charged with a crime to "get him off [] campus" since WISD could not otherwise terminate his employment because he was under contract. Dkt. 16, at 6-8, 19. These allegations "raise[] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action," and Moeller can be liable based on her alleged participation in the conspiracy "'[r]egardless of whether or not [Moeller's] actions alone actually caused a constitutional violation[.]'" *Bevill*, 26 F.4th at 283 (quoting *Latiolais v. Cravins*, 484

8

F. App'x 983, 989 (5th Cir. 2012)); *see also Morales v. Carrillo*, 625 F. Supp. 3d 587, 606 (W.D. Tex. 2022) ("Under § 1983, a conspiracy by itself ... is not actionable. Rather, conspiracy is the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act." (cleaned up)).

Moeller also raises the independent-intermediary doctrine to argue that Schachter failed to allege any facts showing that Moeller directed the inclusion of her statements in the warrant affidavit or knew that her statements to law enforcement would be used in such a way. Dkt. 24, at 5-7. Moeller adds that Schachter fails to identify which portion of the warrant affidavit he claims was false and attributable to Moeller. *Id.* Under the independent-intermediary doctrine, "[a] warrant secured from a judicial officer typically insulates law-enforcement personnel who rely on it from liability for unlawful arrest, even in the absence of probable cause," because the "intermediary's decision breaks the chain of causation for the Fourth Amendment violation." *Hughes v. Garcia*, 100 F.4th 611, 619 (5th Cir. 2024) (internal citation omitted). Under the *Franks* exception to the independent-intermediary doctrine, however, "an officer cannot avoid liability where a warrant affidavit (1) contains false statements or material omissions (2) made with at least 'reckless disregard for the truth' that (3) were 'necessary to the finding of probable cause'" by the independent intermediary. *Id.* (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)); *see also id.* at 620 (noting that "*Franks* liability is not limited to the person who prepared or signed the warrant affidavit" but instead can apply to "any person directing the inclusion of false information in the affidavit" or "any person who supplied false

9

information for the purpose of compiling a warrant affidavit" (internal citations omitted)).

Here, Moeller's invocation of the independent-intermediary doctrine is similarly unconvincing given that Schachter need not show that Moeller herself directed the inclusion of false information in the warrant to establish a Fourth Amendment violation against Moeller based on a conspiracy theory of liability. In his amended complaint, Schachter satisfied the *Franks* exception to the independent-intermediary doctrine by identifying at least 13 intentional omissions to the warrant affidavit—which he alleges arose from the conspiracy to commit false arrest—that would have negated a finding of probable cause by an independent intermediary. Dkt. 16, at 18-19. As explained above, liability may attach to Moeller as a member of the conspiracy to commit false arrest regardless of whether she herself committed the constitutional violation by directing the inclusion or omission of information in the warrant affidavit that was dispositive to the probable cause finding against Schachter. Instead, Schachter needed only to have alleged "a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy," which he has done by pleading that the law-enforcement officials who entered the conspiracy with Moeller deprived Schachter of his constitutional right to be free from false arrest by omitting key facts (that would have belied a finding of probable cause) from the warrant affidavit presented to the independent intermediary. Dkt. 16, at 17-20; *Bevill*, 26 F.4th at 283; *Shaw*, 918 F.3d at 419. Schachter has thus stated a

constitutional violation against Moeller sufficient to overcome her assertion of qualified immunity.

>    2. *Schachter's right to be free from a conspiracy to commit false arrest was clearly established.*

Moeller next argues that she is also entitled to qualified immunity on the clearly-established-law prong of the analysis. Dkt. 24, at 6. Moeller argues that while it was clearly established that an "'officer who recklessly or intentionally contributed misleading statements or omissions to a warrant affidavit violates the arrestee's constitutional rights,'" it is not "clearly established that a government official who is not a police officer and is not employed by the arresting entity but is alleged to be acting under color of state law can be held liable for 'gossiping' with an officer who subsequently prepares statements which are then allegedly used to support an arrest warrant." Dkt. 24, at 6 (quoting *Hughes*, 100 F.4th at 620). Schachter counters that "there can be no argument" that his right "not [to] be wrongfully arrested" was clearly established at the time of the alleged Fourth Amendment violation. Dkt. 29, at 7-8.

To rebut Moeller's assertion of qualified immunity, Schachter was required to identify a case "in which [a defendant] acting under similar circumstances" was held to have violated the Fourth Amendment. *White v. Pauly*, 580 U.S. 73, 79 (2017); *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (instructing appellate courts "not to define clearly established law at too high a level of generality"); *see also Rogers v. Jarrett*, 63 F.4th 971, 975 (5th Cir. 2023) ("plaintiffs bear the burden to demonstrate the inapplicability of the [qualified immunity] defense" (internal citation removed)). While there does not have to be "a case directly on point," existing precedent must

11

place the unlawfulness of the seizure "beyond debate" such that "every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). The "focus" of the analysis is thus whether the officer had "fair notice" that her conduct was unlawful. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("focus" of qualified-immunity analysis is "whether the officer had fair notice that her conduct was unlawful"); *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc) ("The *sine qua non* of the clearly-established inquiry is 'fair warning.'" (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002))).

Here, Schachter identified *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007), as supplying the clearly established right to be free from false arrest. Dkt. 29, at 8. There, the Fifth Circuit stated that "it is beyond question that [plaintiff] has a clearly established constitutional right to be free from arrest absent an arrest warrant or probable cause." *Freeman*, 483 F.3d at 411 (citations omitted); *see also Morales*, 625 F. Supp. 3d at 607 ("It is clearly established that a defendant may be liable for their participation in a conspiracy to violate a constitutional right, '[r]egardless of whether or not [that defendant's] actions alone actually caused a constitutional violation.'" (quoting *Bevill*, 26 F.4th at 283)). As explained above, Moeller does not challenge the existence of this clearly established law but seeks to narrow the scope of the inquiry— or as Schachter puts it "turn the 'clearly established' analysis on its head"—to whether a non-law-enforcement official may be liable for "gossiping" to law enforcement about a criminal suspect who is later arrested. Dkts. 24, at 6; 29, at 7. Moeller misses the mark for two reasons. First, Schachter's claim against Moeller is

12

not based solely on his allegation that she "gossiped" about him with law enforcement; instead, he alleges that Moeller entered into a conspiracy with law enforcement "to frame Mr. Schachter so he would never be able to teach again." Dkt. 16, at 6, 8, 17-20.

Moreover, the relevant inquiry is not whether it was clearly established that Moeller could not "gossip" with law enforcement about Schachter, but whether the underlying constitutional right Schachter alleges defendants violated through their conspiracy was clearly established. *Morales*, 625 F. Supp. 3d at 607 ("[W]hen a defendant faces conspiracy claims under § 1983, the qualified immunity analysis that applies to the underlying § 1983 claims resolves the qualified immunity analysis for the conspiracy." (citing *Bevill*, 26 F.4th at 283)); *see also Hill v. City of Seven Points*, 31 F. App'x 835 (5th Cir. 2002) ("Defendants are entitled to qualified immunity from the § 1983 conspiracy claim if they are entitled to qualified immunity from the underlying § 1983 claims."). Schachter alleged that defendants' conspiracy resulted in a violation of his right to be free from wrongful arrest and has identified clearly established law giving Moeller notice that her participation in such a conspiracy was unlawful. Dkt. 16, at 6, 8, 17-22; *Freeman*, 483 F.3d at 411; *Bevill*, 26 F.4th at 283. Schachter has thus overcome Moeller's assertion of qualified immunity as to the clearly-established-law prong of the analysis.

\* \* \*

For these reasons, the Court finds that Schachter has stated a claim against Moeller for conspiracy to commit false arrest, and that Schachter's right to be free

from such a Fourth Amendment violation was clearly established at the time of his arrest. Thus, he has overcome Moeller's assertion of qualified immunity at this stage in the litigation.[5]

### B. Schachter's request for relief under the Texas Uniform Declaratory Judgment Act fails.

Schachter also seeks a declaratory judgment under the TDJA, asking the Court to declare invalid and unenforceable the "separation agreement and release of claims," which he alleges that he signed against his will at the behest of WISD's superintendent. Dkt. 16, at 22-23. Moeller moved to dismiss this request for relief, arguing that this Court does not have subject-matter jurisdiction[6] over it and that Schachter has failed to properly request declaratory relief under the TDJA because he had not joined all necessary parties. Dkt. 24, at 8-9.

While the parties dispute whether Schachter included all necessary parties in his request for a declaration under the TDJA, neither grapples with the underlying issue of the TDJA's (in)applicability in federal court. The Fifth Circuit has confirmed that "the TDJA is a procedural, and not a substantive, provision, and therefore does

---

[5] Moeller may of course reassert qualified immunity later in this litigation. *Traweek v. Gusman*, 414 F. Supp. 3d 847, 861 (E.D. La. 2019) ("If the Court denies a motion to dismiss asserting qualified immunity, the government officials are not precluded from litigating the immunity issue on summary judgment." (citing *McGee v. Carrillo*, 297 F. App'x 319, 321-22 (5th Cir. 2008))).

[6] Moeller bases her argument for dismissal for lack of subject-matter jurisdiction on Schachter's failure to list the statute (28 U.S.C. § 1367(a)) under which this Court may exercise jurisdiction over this request for relief. Dkts. 16, at 17; 24, at 8; 29, at 8. The Court declines to dismiss Schachter's request for declaratory relief on the basis of this typographical error.

not apply to actions in federal court." *Vera v. Bank of Am., N.A.*, 569 F. App'x 349, 352 (5th Cir. 2014) (citing *Utica Lloyd's v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998). Because Schachter explicitly brought his request for declaratory relief under the TDJA, rather than its federal counterpart, his request for such relief will be dismissed. *See id.* (finding that district court did not err in finding that plaintiff failed to state a claim under Rule 12(b)(6) where "claim for declaratory judgment was brought under the [TDJA]"); *see also United Prop. & Cas. Ins. Co. v. Davis*, No. CV H-18-3227, 2019 WL 4054015, at *7 (S.D. Tex. Aug. 28, 2019) ("The court dismisses [plaintiff's] counterclaim seeking a declaratory judgment under the Texas Declaratory Judgments Act, with prejudice and without leave to amend, because amendment would be futile.").[7] Moeller's motion to dismiss Schachter's request for relief under the TDJA will thus be granted.

## IV.   CONCLUSION

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Moeller's motion to dismiss, Dkt. 24. Moeller's motion to dismiss Schachter's request for declaratory relief under the TDJA is granted, and Moeller's motion is otherwise denied.

---

[7] Although courts "sometimes consider whether relief under the Declaratory Judgment Act 28 U.S.C.A. § 2201 ('DJA'), would be warranted" when assessing requests for relief brought under the TDJA, this usually occurs when a case has been removed from state court—not where, as here, plaintiff himself chose to explicitly invoke the TDJA in federal court and did not brief the issue. *Bichel v. Kennedale Indep. Sch. Dist.*, No. 4:23-00886-BP, 2024 WL 1776405, at *9 (N.D. Tex. Apr. 24, 2024); *Rombough v. Bailey*, 733 F. App'x 160, 165 n.3 (5th Cir. 2018) (noting that "actions [seeking relief under the TDJA] are construed as brought under the federal Declaratory Judgment Act once they have been removed").

SIGNED May 30, 2025.

                                        DUSTIN M. HOWELL
                                        UNITED STATES MAGISTRATE JUDGE